UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON TYRONE PALMER,

        Plaintiff,

v.

                                   Case No. 4:24-cv-12393
                                   District Judge F. Kay Behm
                                   Magistrate Judge Anthony P. Patti

AMERICAN EXPRESS,

        Defendant.

_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT DEFENDANT'S MOTION (ECF No. 38) TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT (ECF No. 35)</u>**

**I.**    **RECOMMENDATION**:  The Court should **GRANT** Defendant's motion

(ECF No. 38) to dismiss Plaintiff's third amended complaint (ECF No. 35) and

dismiss this matter with prejudice.

**II.**    **REPORT:**

      It appears that Brandon Tyrone Palmer has filed three other lawsuits before

this Court.[1]  This report and recommendation concerns only Case No. 4:24-cv-

---

[1] *See*, *e.g.*, *Palmer v. Bokani Property Management Group*, Case No. 2:23-cv-
12961-MFL-EAS (E.D. Mich. May 22, 2024) (dismissing complaint for failure to
comply with the Court's February 1 order); *Palmer v. Security Credit Union*, Case
No. 2:24-cv-12575-GAD-APP (E.D. Mich. Mar. 11, 2025) (granting *in forma
pauperis* application and dismissing case under 28 U.S.C. § 1915(e)(2)); and,
*Palmer v. Crosscountry Mortgage*, 2:24-cv-13457-RJW-CI (E.D. Mich. Jan. 8,
2025) (granting *in forma pauperis* application and dismissing without prejudice for
failure to state a claim for relief).

12393-FKB-APP (E.D. Mich.), which Plaintiff initiated on September 11, 2024

solely against Defendant American Express.

> **A.    The Court construes Plaintiff's January 30, 2025 third amended complaint (ECF No. 35) as the operative pleading.**

This is a Consumer Credit Protection Act (CCPA) case.  *See* 15 U.S.C. §§

1601-1693r.[2]  Plaintiff initiated this fee-paid matter, alleging that he "has a right to

credit pursuant to" 15 U.S.C. § 1602.  (ECF No. 1, PageID.5.)  On September 19,

2024, he filed a first amended complaint (FAC), though there were few appreciable

differences from the prior version.  (*Compare* ECF No. 1, PageID.5-6, 11; *with*

ECF No. 8, PageID.40-41, 46.)

Following the Court's December 2024 order, which, *inter alia*, granted

Defendant's motion to set aside Clerk's entry of default  (*see* ECF No. 31,

PageID.163-166), Plaintiff filed a second amended complaint (SAC) (ECF No. 34)

and a third amended complaint (TAC) (ECF No. 35).  (*See also* ECF No. 37.)  It

appears the only difference between the SAC and the TAC is the latter's addition

---

[2] The Consumer Credit Protection Act (CCPA), 15 U.S.C. §§ 1601-1693r, is comprised of statutes related to:  (1) consumer credit cost disclosure (§§ 1601-1667f), also known as the Truth in Lending Act; (2) restrictions on garnishment (§§ 1671-1677); (2a) credit repair organizations (§§ 1679-1679j); (3) credit reporting agencies (§§ 1681-1681x); (4) equal credit opportunity (§§ 1691-1691f), *i.e.*, the Equal Credit Opportunity Act; (5) debt collection practices (§§ 1692-1692p); and, (6) electronic fund transfers (§§ 1693-1693r).

of Exhibit H.  (*See* ECF No. 35, PageID.232-233.)  (*See also* ECF No. 42 [Addendum to Complaint].)

### B.    Pending Motion

Judge Behm has referred this case to me for pretrial matters.  (ECF No. 29.) Currently pending before the Court is Defendant American Express's February 7, 2025 motion (ECF No. 38) to dismiss Plaintiff's January 30, 2025 TAC (ECF No. 35).  (*See also* ECF No. 39 [Certificate of Service], ECF No. 42 [Addendum to Complaint].)  Plaintiff's response was due on March 18, 2025.  (ECF No. 40.)

On February 11, 2025, Plaintiff filed what has since been characterized as a response (ECF No. 41), and Defendant filed a reply on February 25, 2025 (ECF No. 43).  (*See also* ECF No. 53.)  Thus, this matter is now ready for decision.[3]

### C.    Fed. R. Civ. P. 12

Defendant's motion to dismiss is based upon Fed. R. Civ. P. 12(b)(6).  (ECF No. 38, PageID.240, 258-259.)  When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim

---

[3] Also pending before the Court is Defendant's April 21, 2025 motion for sanctions (ECF No. 54), as to which Plaintiff's response is due on May 16, 2025 (ECF No. 55).  The sanctions motion will be addressed under separate cover.

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'"

4

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[4]

### D.    Discussion

#### 1.    Factual allegations

It appears Plaintiff's FICO score was 530 on June 5, 2024.  (ECF No. 35, PageID.215.)[5]  A few days later, on June 9, 2024, American Express wrote to Plaintiff to let him know that it could not approve his application at that time.  (*Id*.)

Plaintiff wrote to Defendant's Chief Financial Officer (CFO) on July 17, 2024, labeled a "notice of claim to interest," and on July 26, 2024, labeled an "opportunity to cure."  (ECF No. 35, PageID.210-211, 216, 219-220.)[6]  In a letter dated July 29, 2024, American Express wrote to Plaintiff, explaining that its decision "remains unchanged."  (ECF No. 35, PageID.217.)  In a letter dated August 2, 2024, American Express explained that a second evaluation was

---

[4] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

[5] "The base FICO® Scores range from 300 to 850, and the good credit score range is 670 to 739."  *See* https://www.experian.com/blogs/ask-experian/credit-education/score-basics/what-is-a-good-credit-score/ (last visited Apr. 30, 2025).

[6] Attached to the operative pleading are other items dated July 17, 2024, including a "durable power of attorney" and an "acceptance of trust."  (*Id*., PageID.221-228.)

conducted and "unfortunately our decline decision remains based on your FICO score."  (ECF No. 35, PageID.218.)

On August 5, 2024, Plaintiff wrote another letter to Defendant's CFO, this time labeled a "default judgment."  (ECF No. 35, PageID.212, 219.)

## 2.    Truth in Lending Act (TILA) (15 U.S.C. §§ 1601-1667f)

Plaintiff's operative pleading expressly cites 15 U.S.C. § 1602 of the TILA. (*See* ECF No. 35, PageID.207.)  The purpose of the consumer credit cost disclosure statutes is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a) ("Informed use of credit").

Plaintiff alleges that he "has a right to credit" pursuant to 15 U.S.C. § 1602 and that Defendant violated such right.  (ECF No. 35, PageID.207.)  He makes a similar contention in his February 11, 2025 filing, which this Court has construed as a response (*see* ECF No. 53, PageID.343-344).  (ECF No. 41, PageID.274.)

However, as Defendant points out, Section 1602 concerns "definitions and rules of construction."  (*Id*., PageID.260; *see also* ECF No. 43, PageID.306-307.) And, as another judge of this Court stated in one of Plaintiff's other cases, "15 U.S.C. § 1602 is merely a definitional statute that in relevant part defines 'credit'

as 'the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.'"  *Palmer v. Crosscountry Mortg.*, No. 24-CV-13457, 2025 WL 51961, at *1 (E.D. Mich. Jan. 8, 2025) (White, J.) (quoting 15 U.S.C. § 1602(f)).  "Because 15 U.S.C. § 1602 does not provide any legal claim or right to recovery regarding the denial of credit, it cannot support Plaintiff's claims."  *Palmer*, 2025 WL 51961, at *1.

For these reasons, the Court should conclude that Plaintiff's TAC fails "to state a [TILA] claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

### 3.    Equal Credit Opportunity Act (ECOA) (15 U.S.C. §§ 1691-1691f)

The TAC's references to "right to credit" and "discrimination" (*see id*., PageID.207) suggest an intention to allege a claim under some unspecified section of the ECOA.  "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction--**(1)** on the basis of *race, color, religion, national origin, sex or marital status, or age* (provided the applicant has the capacity to contract); **(2)** because all or part of the applicant's income derives from any public assistance program; or **(3)** because the applicant has in good faith exercised any right under this chapter."  15 U.S.C. § 1691(a) (emphasis added).  "Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a

7

completed application for credit, a creditor shall notify the applicant of its action

on the application."  15 U.S.C. § 1691(d)(1).  Moreover,

> Each applicant against whom adverse action is taken shall be entitled
> to a statement of reasons for such action from the creditor.  A creditor
> satisfies this obligation by--
>
> **(A)** providing statements of reasons in writing as a matter of course to
> applicants against whom adverse action is taken; or
>
> **(B)** giving written notification of adverse action which discloses (i)
> the applicant's right to a statement of reasons within thirty days after
> receipt by the creditor of a request made within sixty days after such
> notification, and (ii) the identity of the person or office from which
> such statement may be obtained. Such statement may be given orally
> if the written notification advises the applicant of his right to have the
> statement of reasons confirmed in writing on written request.

15 U.S.C. § 1691(d)(2).

Plaintiff alleges Defendant has engaged in "direct discrimination towards the

Plaintiff[,]" (ECF No. 35, PageID.207), and he makes a similar contention in the

two-page, typewritten "Complaint" attached to his currently operative pleading.

(ECF No. 35, PageID.213 ¶ 8; *see also id*., ¶ 3.)  However, if Plaintiff had intended

a claim based on the ECOA, then he has not specified on which of its nine sections

his claim is based.  Moreover, even if the presumed, intended ECOA claim was

based on Section 1691 ("Scope of Prohibition"), the TAC does not specify whether

the alleged discrimination was based on "race, color, religion, national origin, sex

or marital status, or age[,]" 15 U.S.C. § 1691(a)(1), or "because all or part of the

applicant's income derives from any public assistance program[,]" 15 U.S.C. §

1691(a)(2), or "because the applicant has in good faith exercised any right under this chapter[,]" 15 U.S.C. § 1691(a)(3).  He simply alleges that American Express "violated [his] rights by not extending [him] a credit card."  (*See* ECF No. 35, PageID.207.)  Plaintiff's allegation that he "is *entitled* to have a credit card to pay bills[,]" (*id*. (emphasis added)), is conclusory.  It is also unfounded.

In sum, while Defendant puts forth several reasons why Plaintiff has failed to state a claim under ECOA (*see* ECF No. 38, PageID.262-263; ECF No. 43, PageID.307-308), the Court need only address one – the TAC "does not identify that [Plaintiff] is [a] member of [a] protected class[.]"  (ECF No. 38, PageID.262.) Put another way, like in Plaintiff's lawsuit against Crosscountry Mortgage, "Plaintiff . . . fails to *allege* any facts explaining how [Defendant American Express's] denial was discriminatory, and he does not even claim to belong to any protected class." *Crosscountry Mortg.*, 2025 WL 51961, at *2 (emphasis added).

To be sure, in Plaintiff's February 11, 2025 filing, which this Court has construed as a response (*see* ECF No. 53, PageID.343-344), Plaintiff expressly mentions the ECOA, 15 U.S.C. § 1691, and discrimination based on *age*.  (ECF No. 41, PageID.273-274.)  However, these references are absent from the TAC, and "a party may not amend his complaint through an opposition brief."  *Singh v. D.C.*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014).[7]  "Plaintiffs cannot . . . amend their

---

[7] The same is true of Plaintiff's February 11, 2025 filing's references to the

complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). *See also* E.D. Mich. Local Rules 5.1(e) and 7.1(i) ("Motions must not be combined with any other stand-alone document.").[8] Moreover, while Plaintiff contends he is "over the age of 18 and has the capacity to contract[,]" (ECF No. 41, PageID.274), this apparent reference to Section 1691(a)(1)'s age qualifying language does not explain how Plaintiff's age was a basis for the denial of his credit card application. Indeed, Plaintiff's age is unclear, even if he clarifies that he is not a minor.

For these reasons, the Court should conclude that Plaintiff's TAC fails "to state [an ECOA] claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

---

"Federal Reserve Act Section 16," or the "Board of Governors of the Federal Reserve System," or "Federal Reserve Notes," because the TAC does not mention the FRA or 12 U.S.C. §§ 221, *et seq.* (*See* ECF No. 35, PageID.207, 213.) In any event, it is questionable whether such a claim would survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See, e.g.*, *Johnson v. Bank of Am.*, No. 2:25-CV-10481, 2025 WL 714442, at *2 (E.D. Mich. Mar. 5, 2025) (McMillion, J.) ("the Federal Reserve Act Section 16 . . . provide[s] no private cause of action in which [Plaintiff] can sue.").

[8] "For example, a motion for preliminary injunctive relief must not be combined with a complaint, a counter-motion must not be combined with a response or reply, and a motion for downward departure must not be combined with a sentencing memorandum. Papers filed in violation of this rule will be stricken." E.D. Mich. LR 7.1(i).

### 4.   Michigan Uniform Securities Act (MUSA) (Mich. Comp. Laws §§ 451.2101-451.2703)

In the two-page, typewritten "Complaint" attached to Plaintiff's currently operative pleading and each of its predecessors, Plaintiff alleges that Defendant "refused to carry out Fiduciary duties . . . and also refused to carry out the Accord and Satisfaction performance[,]" (ECF No. 35, PageID.213 ¶ 7; *compare* ECF No. 1, PageID.11-12; *with*, ECF No. 8, PageID.46-47; ECF No. 34, PageID.184-185; ECF No. 35, PageID.213-214; and, ECF No. 42, PageID.285-286), Defendant's direct discrimination against him "is Financial Exploitation towards [his] securities[,]" (ECF No. 35, PageID.213 ¶ 8), and Defendant violated Michigan's Uniform Securities Act (MUSA) (*id.*, ¶ 11).  Similarly, Plaintiff's February 11, 2025 filing, which this Court has construed as a response, simply states: "Defendant is . . . committing Financial Exploitation towards Plaintiff securities . . . .  Pursuant to [MUSA][,] Plaintiff is just bringing forth [a]ction to protect the Plaintiff Estate from Financial Exploitation."  (ECF No. 41, PageID.274.)

"[T]he purpose of the [MUSA] is to protect the investing public[.]"  *People v. Mitchell*, 437 N.W.2d 304, 306 (Mich. App. 1989).  Put another way, "the purpose of MUSA [is] 'prevent[ing] stockholders and promoters from perpetrating frauds and impositions on unsuspecting investors in hazardous undertakings....'"  *Perfecting Church v. Royster, Carberry, Goldman & Assocs., Inc.*, No. 09-CV-

11

13493, 2011 WL 4407439, at *2 (E.D. Mich. Sept. 22, 2011) (Rosen, C.J.)

(quoting *People v. Breckenridge,* 263 N.W.2d 922, 926 (Mich. App.1978)).

There are approximately 70 sections to MUSA;[9] yet, consistent with the

vague generalities of his overall pleading, Plaintiff's complaint does not reference

a particular one.  In any event, Defendant convincingly contends that "the offer,

sale, or purchase of a security . . . [,]" Mich. Comp. Laws § 451.2501, is not

implicated by Defendant's "denial of Plaintiff's credit application . . . ."  (ECF No.

38, PageID.263; ECF No. 43, PageID.308.)  Indeed, within MUSA's "general

provisions," *i.e.*, Sections 451.2101 – 451.2105, "security" is defined as:

> . . . a note; stock; treasury stock; security future; bond; debenture;
> evidence of indebtedness; certificate of interest or participation in a
> profit-sharing agreement; collateral trust certificate; preorganization
> certificate or subscription; transferable share; investment contract;
> voting trust certificate; certificate of deposit for a security; fractional
> undivided interest in oil, gas, or other mineral rights; put, call,
> straddle, option, or privilege on a security, certificate of deposit, or
> group or index of securities, including an interest in or based on the
> value of that put, call, straddle, option, or privilege on that security,
> certificate of deposit, or group or index of securities; put, call,
> straddle, option, or privilege entered into on a national securities
> exchange relating to foreign currency; an investment in a viatical or

---

[9] The articles of MUSA concern:  (1) General Provisions (451.2101 to 451.2105);
(2) Exemptions from Registration of Securities (451.2201 to 451.2204); (3)
Registration of Securities and Notice Filings of Federal Covered Securities
(451.2301 to 451.2307); (4) Broker-Dealers, Agents, Investment Advisers,
Investment Adviser Representatives, and Federal Covered Investment Advisers
(451.2401 to 451.2413); (4a) Michigan Investment Markets (451.2451 to
451.2469); (5) Fraud and Liabilities (451.2501 to 451.2510); (5a)  Financial
Exploitation (451.2531 to 451.2543); (6) Administration and Judicial Review
(451.2601 to 451.2612); and, (7) Transition (451.2701 to 451.2703).

> life settlement agreement; or, in general, an interest or instrument commonly known as a "security"; or a certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Mich. Comp. Laws Ann. § 451.2102c(c).  Moreover, to the extent Plaintiff intended to base his MUSA claim upon the sections related to "fraud and liabilities," *see* Mich. Comp. Laws §§ 451.2501-451.2510, this Court stated in another of Plaintiff's lawsuits:

> . . . although MUSA allows the purchaser of securities to maintain an action for fraud against a seller, *see* Mich. Comp. Laws § 451.2509, Plaintiff does not allege that this case involves any purchase of a security.  Indeed, the allegations and documents attached to Plaintiff's complaint show that Defendant denied Plaintiff's request for credit at the prequalification stage.  (ECF No. 1, PageID.17-18, 26-28).  There was therefore never any effectuated loan, let alone any securitized mortgage subject to MUSA or any similar federal law.  *See Caldrello v. Wells Fargo Bank, N.A.*, No. 2024 U.S. Dist. LEXIS 181653, *9-11, 2024 WL 4416593 (the plaintiff, a mortgagor in foreclosure, failed to plead a federal claim of securities fraud because "she does not allege that she purchased the note-become-mortgage-backed-security or any other security").

*Crosscounty Mrtg.*, 2025 WL 51961, at *1.  And, to the extent Plaintiff intended to base his MUSA claim upon the sections related to "financial exploitation," (*see* Mich. Comp. Laws §§ 451.2531-451.2543), the TAC does not allege *how* American Express financially exploited him "by not extending [him] a credit card."  (*See* ECF No. 35, PageID.207, 213.)[10]  Finally, Plaintiff "does not allege

---

[10] *See* EXPLOITATION, Black's Law Dictionary (12th ed. 2024) ("The act of

any facts showing how [American Express] breached any fiduciary duty, or even that the parties were ever engaged in any fiduciary relationship." *Crosscountry Mortg.*, 2025 WL 51961, at *2.  To be clear, Plaintiff's June 2024 *application* for a credit card is not *entering into* "a consumer credit transaction involving a credit sale with Defendant American Express . . . ."  (ECF No. 35, PageID.213 ¶ 4.)

For these reasons, the Court should conclude that Plaintiff's TAC fails "to state [an MUSA] claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

### E.    Conclusion

If the Court agrees with the foregoing conclusions that Plaintiff has failed to state TILA, EOCA or MUSA claims "upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6), then it need not address Defendant's sovereign citizen argument. (ECF No. 38, PageID.265-266; ECF No. 43, PageID.309-311.)  To the extent Defendant seeks dismissal of the TAC with prejudice "because further amendment would be futile[,]" (*id.*, PageID.266-267), it makes a convincing argument. Notwithstanding the Court's March 21, 2025 order denying without prejudice Plaintiff's March 2025 attempts to amend (ECF Nos. 49, 51) (*see* ECF No. 53,

---

taking advantage of something; esp., the act of taking unjust advantage of another for one's own benefit or selfish ends.").  Here, Defendant's refusal to extend a credit card based on a poor credit score would appear to be an act of mercy, and quite the opposite of exploitation.

PageID.344-345), amendment to include appropriate statutory subsections of TILA, ECOA, and MUSA would not aid Plaintiff's cause, because:  (1)  "Plaintiff was never a customer of American Express or granted any line of credit," so "he cannot allege any valid TILA claim[;]" (2) "Plaintiff's TAC clearly shows that he was never qualified for credit with American Express in the first instance . . . [,]" so he "cannot state [a] claim for discrimination under ECOA[;]" and, (3) "allowing Plaintiff to amend his MUSA claim would be futile as well," because "the application and denial of a credit application does not implicate the sale or purchase of any security[.]"  (ECF No. 38, PageID.266-267.)

For the foregoing reasons, the Court should **GRANT** Defendant's motion (ECF No. 38) to dismiss Plaintiff's TAC (ECF No. 35) and dismiss this matter with prejudice.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this

15

Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  May 7, 2025

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

16